IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

M.R., by and through her parents,
N. R.AND A.R.
20015 PLACID LAKE TERRACE
GERMANTOWN, MARYLAND 20874

N.R. AND A.R.
20015 PLACID LAKE TERRACE
GERMANTOWN, MARYLAND 20874
MONTGOMERY COUNTY, MARYLAND

PLAINTIFFS

v.                                                               Civil Action No.
                                                                 **TDC-17-3836**

AZIN TAJDAR
12914 TRAVILAH ROAD
POTOMAC, MARYLAND 20854
MONTGOMERY COUNTY, MARYLAND

DEFENDANT

COMPLAINT

I.

PRELIMINARY STATEMENT

Plaintiff M.R. is a three-year-old student with disabilities who resides in Montgomery County, Maryland. M.R. is a person with a disability as defined by the Americans with Disabilities Act, (ADA) 42 U.S.C. §12101 *et seq.*

M.R. (M.) was born on September __, 2014. M. begins attending Azin Tajdar's home day care on January 5, 2015. M. is a full-time attendee at Ms. Tajdar's home day care. On or about October 14, 2016 Ms. Tajdar and the R.s became concerned about M.'s increasing isolation at day care and sought advice from their pediatrician. M. was seen by Montgomery County Public Schools' (MCPS) Infants and Toddlers program to determine whether M. had a disability that qualified her for educational services from MCPS. Within months of being identified as having a

1

disability, M. was dismissed from Azin Tajdar's home day care.

M.R. and her parents bring this action to enjoin permanently the Defendant, Azin Tajdar and any other employees, owners, officers, agents, and successors of the home daycare from discrimination and retaliation against M. and her parents for exercising M.'s rights under the Americans with Disabilities Act (ADA).

II.

JURISDICTION

1. Plaintiffs bring this action pursuant to the ADA, 42 U.S.C. §12101 *et seq.* and Md. State Gov't Code §20-302, §20-304 and §20-305 (2016).

2. This Court has jurisdiction and venue over this matter pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 (3) and (4).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because each of the defendants resides, transacts business, is found, and has agents in this District, and because a substantial part of the events or actions giving rise to the Plaintiffs' claims occurred in this District.

III.

PARTIES

4. Plaintiff is a three-year-old Montgomery County student with a disability, namely autism spectrum disorder (ASD), a developmental disability disorder that appears in early childhood. Some of the behaviors associated with autism include delayed learning of language; difficulty making eye contact or holding a conversation; difficulty with executive functioning, which relates to reasoning and planning; narrow, intense interests; poor motor skills' and sensory sensitivities. This disability may also result in difficulty with lack of or delay in spoken language, repetitive use of language and/or motor mannerisms (e.g., hand-flapping, twirling objects), little or no eye contact, lack of interest in peer relationships, lack of spontaneous or make-believe play, and persistent fixation on parts of objects. M.R. brings this action by her parents and next friends,

N.R. and A.R..

5. N.R. and A.R. are M.'s parents.

6. M.R. and her parents reside, along with her brother K.R., in Germantown, Montgomery County, Maryland.

7. Defendant Azin Tajdar runs a home-based daycare, Kids and Tots Preschool and Nursery, in her home at 12914 Travilah Road, Potomac, Maryland in Montgomery County.

8. Plaintiff M.R. attended Kids and Tots home based day care at 12914 Travilah Road, Potomac, Maryland beginning on January 5, 2015.

9. Defendant Azin Tajdar is a licensed home day care provider by the Office of Child Care in the State of Maryland. http://www.checkccmd.org/FacilityDetail.aspx?ft=&fn=tajdar&sn=&z=&c=&co=Montgomery%20County&fi=331746 (last visited December 28, 2017).

10. Defendant Azin Tajdar is the home day care provider of Kids and Tots. As the licensed sole provider of Kids and Tots, she is solely responsible for the conduct of the Kids and Tots in Potomac, Maryland and its employees. She is sued in her official and personal capacities.

IV.

STATEMENT OF FACTS

11. Plaintiff is a three-year-old Montgomery County student with a disability, namely autism spectrum disorder (ASD), a developmental disability disorder that appears in early childhood. Some of the behaviors associated with autism include delayed learning of language; difficulty making eye contact or holding a conversation; difficulty with executive functioning, which relates to reasoning and planning; narrow, intense interests; poor motor skills' and sensory sensitivities. This disability may also result in difficulty with lack of or delay in spoken language, repetitive use of language and/or motor mannerisms (e.g., hand-flapping, twirling objects), little or no eye contact, lack of interest in peer relationships, lack of spontaneous or make-believe play,

3

and persistent fixation on parts of objects.

12. M.R. is a person with a disability as defined by the ADA, 42 U.S.C. §12132 and is, therefore, entitled to the protection of the ADA.

13. N.R. and A.R. are M.'s parents.

14. N.R. and A.R. each work full time outside of the home.

15. M. began full-time at Kids and Tots on January 5, 2015, at a cost of $275 a week.

16. M. was nearly four months old when she began at Kids and Tots, Ms. Tajdar's home-based daycare.

17. On December 6, 2015 Ms. Tajdar texted Mrs.R. and raised her rates to $300.00 per week for Kids and Tots home daycare located in Ms. Tajdar's home.

18. On or about October 14, 2016 Mr. and Mrs.R. become concerned about M. isolating herself in group settings.

19. On or about November 7, 2016 Mrs.R. texted Ms. Tajdar and asked her to write down her concerns about M.'s development to share with M.'s pediatrician.

20. On or about November 8, 2016 Mr. and Mrs.R. meet with their pediatrician to review concerns about M.'s lack of language and isolation in daycare and group settings.

21. On November 17, 2016 M. had her first intake with Montgomery County Public Schools' Infants and Toddlers in order to determine whether M. had a disability and qualified for educational services through the County's program.

22. On November 23, 2016 M. has a second intake with Infants and Toddlers and is found to be a child with a disability. MCPS develops an official Individualized Family Service Plan (IFSP) in order for M. to receive educational services.

23. As part of the IFSP plan MCPS agreed to provide services to M. at the daycare every other Wednesday at 8:30 am, the second and fourth Wednesday of every month, beginning December 14, 2016.

24. Ms. Tajdar of Kids and Tots requested that the time be moved to 9:30 am due to napping schedules at the Kids and Tots home-based daycare.

25. MCPS and the R.s agree to the time change.

26. MCPS begins services at the Kids and Tots home daycare on January 9, 2017 located in Ms. Tajdar's home. Noelle Fonseca provides the MCPS IFSP services.

27. On February 9, 2017 M. receives a formal diagnosis of autism from Kennedy Kreiger Institute (KKI).

28. Noelle Fonseca continues to provide services to M. at Ms. Tajdar's Kids and Tots home daycare through March 8, 2017.

29. On or about March 8, 2017 Ms. Tajdar speaks with the Mr. and Mrs. R. about requesting Applied Behavior Analysis (ABA) intervention from MCPS, to be funded by MCPS.

30. At Ms. Tajdar's suggestion, Mr. and Mrs. R. make the request and it is agreed that M. will receive these services of ABA.

31. ABA is the process of systematically applying interventions based upon the principles of learning theory to improve socially significant behaviors to a meaningful degree, and to demonstrate that the interventions employed are responsible for the improvement in behavior. Specifically, Applied Behavior Analysis involves the principles of learning theory. The contingent use of reinforcement and other important principles to increase behaviors, generalize learned behaviors or reduce undesirable behaviors is fundamental to ABA.

32. On or about March 15, 2017 Ms. Tajdar's home-based daycare rearranges "classroom" space that had been agreed upon for M. to receive services and makes it a functional space for all daycare attendees to use. The "classroom" was previously unused in the two plus years since M. entered Kids and Tots in January 2015.

33. Once M. was determined eligible for services A.R. and N.R. rearranged work schedules to allow other service to take place in their home, such as speech and language services and some

of Noelle Fonseca's services were also provided in the family's home.

34. On March 17, 2017 Azin Tajdar spoke to A.R. about not allowing M. to use the classroom for ABA services. Ms. Tajdar offered for M. to use the small nap room instead and instructed Mrs. R. to bring a table and chairs into the nap room located at the Kids and Tots home daycare. The R.s comply with this request.

35. On March 23, 2017 M. has her first ABA intake appointment at daycare in the nap room.

36. On March 23, 2017 A.R. texts Azin Tajdar and asks how M. was doing after the ABA intake appointment. Ms. Tajdar wrote, "It took about ten minutes and she was fine."

37. On March 27, 2017 Azin Tajdar confronted A.R. upon drop off of M. and, in front of another parent, stating that she would not provide M. either the classroom or the nap room for her ABA services 10 hours a week.

38. On March 28, 2017 M. had a second one-hour ABA session in the nap room, during which N.R. spoke to Azin Tajdar about the March 27, 2017 conversation. Azin Tajdar reiterated that she would not allow ABA to meet in her daycare five days a week.

39. On March 28, 2017 subsequent to the conversation, Azin Tajdar then texted N.R. and A.R. later in the day asking to meet with them jointly at their earliest convenience.

40. On March 30, 2017 Azin Tajdar told both N.R. and A.R. that she was not obligated to provide accommodations for M. Further, she informed them at this meeting that she had a new infant starting on April 17, 2017 and would no longer have space for M. in the nap room.

41. On March 30, 2017 Ms. Tajdar also stated that the classroom, which had only been a functional space for all daycare attendees since on or about March 15, 2017, was no longer an option for ABA services as "it wouldn't be fair to the other kids and it wouldn't be fair to me."

42. Ms. Tajdar further stated that the R.s would need to find another day care for M. and stated that she was unwilling to make accommodations for her and she had to "draw a line." Ms.

6

Tajdar expelled M. from her home-based day care.

43. On March 30, 2017 Ms. Tajdar emailed the following to Mr. and Mrs. R.: "Unfortunately as of April 17 I will not have a private room available for M.'s ABA. I will have a new infant coming to my day care starting April 17th and as you know the private room used at present for her private session is our nap room for infants and younger kids. I am so sorry I will not be able to meet M.'s need due to limited space and resources. Hope you will find a suitable child care for Magi that could meet her needs."

44. As of March 29, 2017 Kids and Tots had eight children under Azin Tajdar's care: M., Albors, Neeko, Ethan, Connor, Elizabeth, Ariana, and Avie. The addition of a new infant (Ethan's younger sister) on April 17, 2017 would have placed the total number of kids at nine, one more than the maximum allowed by the state. The monthly fee for taking care of the new infant that replaced M. at Kids and Tots is believed to be higher than the monthly fee for a toddler like M., so by refusing to reasonably accommodate M. and expelling her, Kids and Tots was able to open up a more profitable spot for the new infant.

45. Ms. Tajdar had a duty to protect M.R. from injury, i.e. expulsion based on her disability, and failed to protect M.R.

46. Ms. Tajdar had a duty to protect N.R. and A.R.. from injury, i.e. expulsion of M.R. based on her disability, and failed to protect A.R. and N.R..

47. From December 14, 2016 through March 8, 2017, M.R. was only visited by a specialist at Kids and Tots four times total. M.R. did not receive these services in the classroom. These four sessions were all held in the common room with the other students. All other services provided in that time frame – including 14 sessions by Montgomery County specialists – were provided out of the parents', A.R. and N.R., home.

48. Upon the unlawful expulsion from day care the family suffered hardship: Mr. and Mrs. R. had to take time off from work; adjusting schedules to care for M. and arrange for the

MCPS services to be exclusively provided out of their home. They arranged for A.R.'s mother to fly in from Texas to assist during this period. The family spent several hours searching for a new daycare with an immediate opening for a two-year-old with autism, finally finding and signing with Potomac Valley Academy beginning on April 17, 2017. The new daycare in not home based.

49. Potomac Valley Academy's location has greatly extended the daily commute and is an additional expense.

50. The additional stress on A.R., 25 weeks pregnant at the time of the expulsion, led to an emergency room visit, high blood pressure, and an early induction during this time.

51. In addition, M. had difficulty with the transition, as her routine was severely disrupted in a way that was particularly troubling to a child with autism.

52. The requested reasonable accommodation requested by the Rs.for M. R. was the use of the classroom or the nap room for use for ABA therapy. Despite an initial agreement Ms. Tajdar declined to provide the accommodation and used, as a pretext, the arrival of a new daycare attendee.

53. On or about April 6, 2017 the R.s filed a complaint about the daycare expulsion with the Maryland Commission on Civil Rights.

54. On August 3, 2017 the Commission on Civil Rights administratively closed their complaint saying they did not have jurisdiction.

55. The state of Maryland does not have a mechanism to resolve daycare disputes such as these.

56. Defendant Azin Tajdar and the staff under her supervision failed to reasonably accommodate M.R.'s needs in the least discriminatory and stigmatizing fashion available so that she might participate in the home daycare.

57. The accommodations requested by the R.s would not have fundamentally altered the Kids and Tots home daycare program.

58. The accommodations, once implemented, would allow N.R. and A.R. to place M. back into the Ms. Tajdar's daycare, an environment she has known for much of her young life, and greatly reduce the expenses and travel time necessary to secure alternative day care after the expulsion from Ms. Tajdar's day care.

59. The ADA requires that child care providers not discriminate against persons with disabilities on the basis of disability, that is, that they provide children and parents with disabilities with an equal opportunity to participate in the child care center's programs and services.

60  Defendant committed the above acts in violation of M.R.'s rights under the ADA.

61. These acts were discriminatory on their face and were taken in direct response to M.R.'s disability.

62. By failing to provide reasonable accommodations after receiving adequate notice, Defendant acted in a discriminatory and illegal fashion toward M.R..

63. These acts of the Defendant were intentional.

64. These acts of the Defendant interfered with M.R.'s right to be free from discrimination.

65. These acts of the Defendant subjected M.R. to removal from the program to which she was accustomed for the previous two years.

66. These acts of the Defendant and their effects continue until this day and are subject to repetition.

67. These actions were grossly indifferent to M. and her parents' rights under the ADA.

68. Defendant Tajdar bears full responsibility for her own actions and the financial, physical and emotional effects said actions had on Plaintiffs.

V.

## LEGAL FRAMEWORK

69. In order to encourage the integration and inclusion of persons with disabilities into "mainstream" society. Congress enacted the ADA in 1990. The ADA prohibits discrimination on the basis of disability by public entities. Title III of the ADA extends this prohibition of discrimination: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation. 28 C.F.R. §36.201 (a).

70. This prohibition against discrimination on the basis of disability applies to private entities as defined and codified at 28 C.F.R. §36.201 (a).

71. 28 C.F.R. §336.206 prohibits retaliation or coercion against an individual who exercises his or her rights under the ADA. Specifically, 28 C.F.R. §36.206 states:

(a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act or this part.

(b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

72. A person with a disability is defined within the ADA as having: "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such impairment; or being regarded as having such an impairment." 28 C.F.R. 36.105.

73. Title III of the ADA prohibits discrimination on the basis of disability in child care centers. Under the ADA, child care centers must make reasonable modifications to their policies,

practices or procedures when necessary to provide equal access to a child with a disability, unless a modification would fundamentally alter the nature of the goods and services.  28 C.F. R. § 36.104 (10) and (11) and 28 C.F.R §36.501.

74. Specifically, Title III at § 36.207 states:

Places of public accommodation located in private residences.
(a) When a place of public accommodation is located in a private residence, the portion of the residence used exclusively as a residence is not covered by this part, but that portion used exclusively in the operation of the place of public accommodation or that portion used both for the place of public accommodation and for residential purposes is covered by this part.
(b) The portion of the residence covered under paragraph (a) of this section extends to those elements used to enter the place of public accommodation, including the homeowner´s front sidewalk, if any, the door or entryway, and hallways; and those portions of the residence, interior or exterior, available to or used by customers or clients, including restrooms.

75.     Md. STATE GOVERNMENT Code Ann. § 20-304 states:

An owner or operator of a place of public accommodation or an agent or employee of the owner or operator may not refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, or privileges of the place of public accommodation because of the person's race, sex, age, color, creed, national origin, marital status, sexual orientation, gender identity, or disability.

## VI

## CAUSES OF ACTION

### COUNT I

### (FAILURE TO ACCOMMODATE BASED ON DISABILITY)

76.  Plaintiffs incorporate by reference the allegations contained in paragraphs 1-75 above. By and through her actions, Defendant Tajdar of Kids and Tots home based daycare discriminated against Plaintiff M.R. in violation of the ADA, 42 U.S.C. §12101 *et seq.* ,its implementing regulations and Maryland anti-discrimination statutes, Md. State Gov't Code §20-302, §20-304 and §20-305 (2016).

### COUNT II

(INTENTIONAL DISCRIMINATION ON THE BASIS OF A DISABILITY)

77. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-76 above. By willfully engaging in the acts described above, Defendants intentionally discriminated against M.R. on the basis of her disability. Defendants violated the mandates of the ADA, 42 U.S.C. §12101 *et seq.*, it's implementing regulations, 28 C.F.R. Part 36 and Maryland anti-discrimination statutes, Md. State Gov't Code §20-302, §20-304 and §20-305 (2016).

COUNT III

(NEGLIGENCE)

78. Plaintiffs incorporate by reference the allegations contained in paragraphs 1-77 above. By willfully engaging in the acts described above, Defendant breached their duty of care to the Plaintiffs and this breach resulted in physical injury to A.R.; emotional distress to A.R., M.R. and N.R.

PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request that this Court assume jurisdiction over this matter and grant the following relief:

1. Issue a judgment declaring that the Defendant violated Plaintiffs' rights under the ADA by discriminating against Plaintiff M.R. on the basis of her disability;

2. Issue a judgment declaring that the Defendant intentionally discriminated against M.R. on the basis of her disability in violation of the ADA. 42 U.S.C. §120101 *et seq.* and 28 C.F.R. §36.101 *et. seq.* and Maryland anti-discrimination statutes, Md. State Gov't Code §20-302, §20-304 and §20-305 (2016).

3. Award compensatory and punitive damages to the Plaintiffs in the amount of $500,000.00 for the violations of Maryland's anti-discrimination statutes, physical injury and

emotional distress caused by Defendant's negligence.

4. Require Defendant to make reasonable accommodations to ensure M.R.'s return to the home-based daycare.

5. Award Plaintiffs their costs, including reasonable attorneys' fees.

6. Grant Plaintiffs such additional relief as this Court deems proper and equitable.

DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury on all claims for which there is a right to a jury trial.

Dated: March 26, 2018        Respectfully submitted,

        /s/Selene Almazan-Altobelli
        Selene Almazan-Altobelli
        Federal Bar No. 10506
        SELENE ALMAZAN LAW, LLC.
        43 Randolph Road
        Suite 202
        Silver Spring, Maryland 20904
        Phone 301-288-4197
        salmazan@inclusionlaw.com

        Attorney for the Plaintiffs

**CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the foregoing Amended Complaint using the CM/ECF system on the 26th of March 2018.  I certify that all participants are registered CM/ECF users and that service will be accomplished by the CM/ECF system to:

James E. Rubin, Esq.
RUBIN UNEMPLOYMENT LAW FIRM, P.C.
600 Jefferson Plaza, Suite 204
Rockville, Maryland 20852
301-760-7914
JRUBIN@RUBINEMPLOYMENTLAW.COM
Counsel for Defendants

                                    /s/Selene Almazan-Altobelli
                                    Selene Almazan-Altobelli
                                    Federal Bar No. 10506
                                    SELENE ALMAZAN LAW, LLC.
                                    43 Randolph Road
                                    Suite 202
                                    Silver Spring, Maryland 20904
                                    Phone 301-288-4197
                                    salmazan@inclusionlaw.com