# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

M.R., *by and through her parents,*
*N.R. and A.R.,*
N.R. and A.R.,

    Plaintiffs,

v.

AZIN TAJDAR,

    Defendant.

Civil Action No. TDC-17-3836

## MEMORANDUM OPINION

Plaintiffs M.R, who is three years old, and her parents have filed a civil action against Defendant Azin Tajdar alleging that Tajdar discriminated against M.R. on the basis of disability by failing to make reasonable accommodation for M.R. at Tajdar's home day care facility and dismissing her from the program. Plaintiffs assert claims under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189 (2012), and anti-discrimination provisions of the Maryland Code, as well as for common law negligence. Presently pending before the Court is Tajdar's Motion to Dismiss. Upon review of the pleadings and briefs, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

M.R. is a three-year-old child who has been diagnosed with autism. In January 2015, her parents, A.R. and N.R., enrolled M.R., then an infant, as a full-time attendee at Kids and Tots, the state-licensed day care program run by Tajdar at her home in Potomac, Maryland. By law, Kids

and Tots is permitted to enroll a maximum number of eight children at one time. The monthly fee for infants is higher than the fee for toddlers.

Beginning in October 2016, A.R. and N.R. became concerned about M.R., specifically her failure to use language and her social isolation. With Tajdar's assistance, they consulted M.R.'s pediatrician and the Montgomery County Public Schools ("MCPS") Infants and Toddlers Program to identify whether M.R. has a disability and could qualify for educational programming through MPCS. On November 23, 2016, MCPS concluded that M.R. has a disability and developed an Individualized Family Service Plan ("IFSP") for her, which stated that MCPS would provide educational services for M.R. both at Plaintiffs' home and at Kids and Tots. MCPS accommodated Tajdar's schedule in planning the biweekly services, which began on January 9, 2017. On February 9, 2017, M.R. was formally diagnosed with autism.

On March 8, 2017, Tajdar suggested that A.R. and N.R. request that MCPS provide and fund an Applied Behavior Analysis intervention ("ABA") for M.R. MCPS agreed to the request. Tajdar also requested that M.R.'s ABA take place in a small nap room, rather than in the classroom space where M.R. had received IFSP services for the previous two months. A.R. and N.R. agreed, and M.R.'s ABA began to take place in the nap room on March 23, 2017. A few days later, on March 27, 2017, Tajdar told A.R. that she "would not provide M. either the classroom or the nap room for her ABA services 10 hours a week." Am. Compl. ¶ 37, ECF No. 13. During a meeting on March 30, 2017, Tajdar told A.R. and N.R. that she was not obligated to provide accommodations for M.R., that M.R.'s ABA could not take place in the classroom because "it wouldn't be fair to the other kids and it wouldn't be fair to me," and that she would no longer have space for M.R. in the nap room because a new infant was enrolling in the program. *Id.* ¶¶ 40–41. Tajdar told A.R. and N.R. that she had to "draw a line" and that they would have to move M.R. to

another day care program. *Id.* ¶ 42. In a follow-up email that same day, Tajdar confirmed this conversation and repeated that she could not provide M.R. a private room for the ABA "due to limited space and resources" and that a new infant was starting at the day care on April 17. *Id.* ¶ 43. Because eight children, including M.R., were enrolled at Kids and Tots at that time, and because the monthly fee for infants is higher than for toddlers, Plaintiffs allege that by expelling M.R., Tajdar "was able to open up a more profitable spot for the new infant." *Id.* ¶ 44.

As a result of M.R.'s expulsion from Kids and Tots, A.R. and N.R. had to take time off from work, adjust their schedules, arrange for all MCPS services to take place in their home, and search for a new day care program with an immediate opening for a two-year-old child with autism. On April 17, 2017, they enrolled M.R. at Potomac Valley Academy at an additional expense and with a significantly longer daily commute. The expulsion disrupted M.R.'s routine "in a way that was particularly troubling to a child with autism." *Id.* ¶ 51. It also resulted in great stress to A.R., who was pregnant, leading to an emergency room visit, high blood pressure, and an early induction.

On December 29, 2017, Plaintiffs filed their Complaint in this Court. On March 26, 2018, Plaintiffs filed an Amended Complaint, in which they alleged failure to accommodate a disability (Count I) and intentional disability discrimination (Count II) under the ADA and its implementing regulations and under Maryland anti-discrimination statutes, Md. Code Ann., State Gov't §§ 20–302, 20–304, and 20–305 (West 2015). They also assert a state law tort claim of negligence (Count III). Plaintiffs seek compensatory and punitive damages, a declaratory judgment, an injunction requiring Tajdar to make reasonable accommodations and allow M.R. can return to her day care program, attorney's fees, and costs.

## DISCUSSION

In her Motion, Tajdar seeks dismissal of all counts of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). First, Tajdar argues that the ADA claim must be dismissed because the ADA does not authorize private claims for monetary damages or declaratory relief and Plaintiffs have not established standing to seek injunctive relief. Second, they argue that the Maryland statutory claims must be dismissed because the relevant statute does not provide a private right of action for a claim of disability discrimination in public accommodations. Finally, they argue that Plaintiffs have failed to state a plausible negligence claim under Maryland law.

### I. Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### II. ADA

In Counts I and II, Plaintiffs allege that Tajdar intentionally discriminated against M.R. and failed to accommodate her disability by expelling her from the day care program, in violation of the ADA. Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns,

leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Day care facilities are places of public accommodation within the meaning of the ADA. *Id.* § 12181(7)(K). The ADA further provides that discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford" services to individuals with disabilities, unless the modification would "fundamentally alter the nature" of the services provided. *Id.* § 12182(b)(2)(A)(ii). A person without a disability may also bring a claim for discrimination under Title III of the ADA if that person is excluded from a place of public accommodation or denied services "because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." *Id.* § 12182(b)(1)(E).

### A. Damages

Although the original Complaint generally sought compensatory and punitive damages, the Amended Complaint narrows that requests to the Maryland statutory claims and the negligence claim. To the extent that Plaintiffs may still seek damages under the ADA, such damages are unavailable. Under Title III of the ADA, a person who faces discrimination in public accommodations on the basis of disability may seek relief under 42 U.S.C. § 2000a-3(a). 42 U.S.C. § 12188(a)(1). That provision states that a person subject to discrimination may bring "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order." *Id.* § 2000a-3(a). Thus, Title III of the ADA "provides a private right of action for injunctive relief but no right of action for monetary relief" for discrimination in public accommodations. *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 638 (4th Cir. 2016). As a result, any claim for damages under the ADA must be dismissed.

## B. Injunctive Relief

Tajdar argues that Plaintiffs have not alleged sufficient facts to establish standing for a claim for injunctive relief. To state a claim for injunctive relief under the ADA, Plaintiffs must show that they meet the requirements of constitutional standing. *See Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 454 (4th Cir. 2017); *A Helping Hand, LLC v. Baltimore County*, 515 F.3d 356, 362–63, 363 n.3 (4th Cir. 2008) (stating that the constitutional standing requirement also applies to associational claims brought by non-disabled plaintiffs under Title III of the ADA).

Article III of the Constitution limits the judicial power of the federal courts to actual "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To invoke this power, a litigant must have standing. *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013). The plaintiff bears the burden of proving standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A plaintiff must establish (1) an injury in fact (2) fairly traceable to the challenged conduct (3) that is likely to be "redressed by a favorable judicial decision." *Hollingsworth*, 133 S. Ct. at 2661. An injury in fact requires "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 561 (internal citations omitted). Here, it is undisputed that Plaintiffs have alleged a concrete, particularized injury, specifically, the denial of childcare services based on M.R.'s disability and the resulting economic harm of higher day care expenses, in violation of legally protected interests under the ADA. *See McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1143 (11th Cir. 2014) (noting that non-disabled plaintiffs bringing associational claims under Title III of the ADA must allege injuries of "exclusion, denial of benefits, or discrimination that they themselves suffer"). M.R. also allegedly suffered the emotional injury of the disruption of a change in day care providers, which is "particularly troubling to a child with autism." Am. Compl. ¶ 51.

In order to have standing to seek injunctive relief, a plaintiff must show more than a past injury: there must be "continuing, present adverse effects." *Nanni*, 878 F.3d at 454 (quoting *Lujan*, 504 U.S. at 564). An injunction cannot issue without a "showing of any real or immediate threat that the plaintiff will be wronged again." *Thomas*, 841 F.3d at 638 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). However, under Title III, a person with a disability need not "engage in a futile gesture" of visiting a place of public accommodation that does not comply with the ADA requirements if that person has notice that the facility "does not intend to comply" with those requirements. 42 U.S.C. § 12188(a).

Thus, to assert a claim for injunctive relief under the ADA, a plaintiff must "plausibly alleg[e] 'a real and immediate threat of repeated injury.'" *Nanni*, 878 F.3d at 455 (quoting *Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991)). For example, in *Nanni*, the plaintiff alleged that the curb ramps, sidewalk ramps, and parking spaces at a shopping center near Interstate 95 ("I-95") in Maryland failed to comply with the accessibility requirements of the ADA and requested an injunction requiring compliance with those standards. *Nanni*, 878 F.3d at 449–50. The court held that the plaintiff had demonstrated "the likelihood of future injury" by alleging "a past injury at a particular location [and] his plausible intentions to thereafter return to that location" because of his frequent travel along I-95 and the convenience of the shopping center as a rest stop. *Nanni*, 878 F.3d at 455. The plaintiff did not need to point to "specific goods, services, and conveniences" that made the shopping center a more advantageous stopping point along I-95 or "precise dates and arrangements" for returning to the shopping center. *Nanni*, 878 F.3d at 456.

By contrast, in *Thomas v. The Salvation Army Southern Territory*, 841 F.3d 632 (4th Cir. 2016), the plaintiff alleged that she suffered discrimination on the basis of a mental health disability when two homeless shelters refused to admit her. *Id.* at 635. The court held that she had not

7

plausibly alleged a future injury because the events had occurred two years before she filed her complaint and she did not allege "that she is still homeless or that the defendants would still deny her access to the shelters because of her disability." *Id.* at 638. The court further relied on the plaintiff's focus in the complaint on the harm from the memories of discrimination, rather than any expressed intent to prevent future discrimination, as demonstrating a lack of a plausible future injury. *Id.* at 638.

Plaintiffs' allegation of M.R.'s exclusion from Kids and Tots is factually more akin to the exclusion from a homeless shelter in *Thomas* than the lack of ADA-compliant features in the parking lot in *Nanni*. Nevertheless, construing the allegations in the light most favorable to Plaintiffs, the Court finds that they have met the future-injury requirement. Unlike in *Thomas*, where there was no allegation that the plaintiff remained homeless and may again seek entry to the homeless shelter, *Thomas*, 841 F.3d at 638, Plaintiffs have specifically asserted that they want to re-enroll M.R. at Kids and Tots, because the home-based day care center is "an environment she has known for much of her young life," and re-enrolling M.R. would "greatly reduce the expenses and travel time" of the replacement childcare. Am. Compl. ¶ 58. In light of Tajdar's statements that "she was unwilling to make accommodations for [M.R.] and that she had to 'draw a line,'" *id.* ¶ 42, Plaintiffs need not show that they attempted to reenroll M.R. in Tajdar's day care, since that step would be "a futile gesture." 42 U.S.C. § 12188(a). Tajdar has identified no enrollment criteria or other legitimate reason to exclude M.R. in the future other than space limitations. As to that issue, although Tajdar allegedly replaced M.R. with another attendee's younger sister and therefore may not presently have a space for M.R., Plaintiffs could reasonably seek an injunction requiring Tajdar to offer the next available opening to M.R.

Tajdar's claim that Plaintiffs cannot seek injunctive relief because they found an alternative placement for M.R. in a non-home-based day care center is entirely unpersuasive. In *Nanni*, the availability of alternative rest stops did not preclude the plaintiff from seeking an injunction to use his preferred rest stop. *See Nanni*, 878 F.3d at 456 (rejecting the argument that the plaintiff had not alleged a likelihood of future harm because he did not specify why the shopping center at issue was a "more advantageous" stopping place than other facilities). Plainly, a family's ability to choose its preferred child care setting, which carries significant implications for a child's development and a family's economic circumstances, is far more important than the ability to choose a particular highway rest stop. Here, although not required to do so, *see id.*, Plaintiffs have identified specific reasons that Kids and Tots is a more advantageous childcare setting for M.R.'s development, her family's finances, and her parents' ability to balance work and childcare responsibilities. They have therefore plausibly alleged an intent to seek re-enrollment, a likelihood of exclusion, and, by extension, a threat of future injury. The Court therefore finds that Plaintiffs have alleged sufficient facts to establish standing to seek injunctive relief.

### C. Declaratory Relief

Tajdar further argues that Plaintiffs' claim for declaratory relief must fail because the available relief for disability discrimination in public accommodations consists of only "preventive relief" such as an "injunction" or "restraining order." 42 U.S.C. § 2000a-3(a). In the ADA context, however, courts generally construe declaratory relief to be "prospective" relief authorized by the statute. *See, e.g., Nanni*, 878 F.3d at 454 (noting that "Nanni is seeking prospective declaratory and injunctive relief rather than damages"). Because the standing requirements for declaratory relief are the same as for injunctive relief, *see id.*, Plaintiffs' ability to pursue a claim for declaratory relief is the same as for injunctive relief.

### III. Maryland Anti-Discrimination Statutes

In Counts I and II, Plaintiffs also allege intentional discrimination and a failure to accommodate M.R.'s disability in violation of Maryland anti-discrimination laws, Md. Code Ann., State Gov't §§ 20–302, 20-304, 20-305. In the Motion, Tajdar argues that this claim should be dismissed because the relevant statutory provisions do not provide a private cause of action.

In the Maryland Code, discrimination in places of public accommodation is addressed in Subtitle 3 of Title 20 of the State Government Article. *See* Md. Code Ann., State Gov't §§ 20–301 to 20–306. Section 20–304 provides that "[a]n owner or operator of a place of public accommodation . . . may not refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, or privileges of the place of public accommodation because of the person's . . . disability." *Id.* § 20–304. A "reasonable accommodation" is defined as "to make a place of public accommodation suitable for access, use and patronage by an individual with a disability without (1) danger to the individual's health or safety; and (2) undue hardship or expense to the person making the accommodation," which may include "a structural change or modification or the provision of special equipment." *Id.* § 20–305(a), (c). A place of public accommodation may deny services "to any person for failure to conform to the usual and regular requirements, standards, and regulations of the establishment, provided that the denial is not based on discrimination on the grounds of . . . disability." *Id.* § 20–302.

A person subject to discrimination in public accommodations "may file a complaint" with the Maryland Commission on Civil Rights, which may issue a complaint against the alleged perpetrator of discrimination "on its own motion." *Id.* § 20–1004; *see id.* § 20–101 (defining "discriminatory act" to include acts prohibited under the public accommodations provisions). Although the statute expressly provides the right to file a civil action to individuals subject to

employment discrimination, *id.* § 20–1013(a), and discrimination in housing practices, *id.* § 20–1035, there is no comparable provision providing a private right of action for claims of discrimination in public accommodations. Indeed, in 2009, the Maryland General Assembly amended Section 20–1013 to add the language that explicitly limited the private right of action to employment discrimination claims. H.B. 54, 2009 Leg., 426th Sess. (Md. 2009) (adding clarifying language to establish that "certain provisions of law relating to civil actions elected or filed by certain complainants apply only to unlawful employment practices"). Thus, Maryland anti-discrimination statutes do not authorize a private individual to file a civil action in court regarding disability discrimination in public accommodations. *See Baker v. Greyhound Bus Line*, 240 F. Supp. 2d 454, 455 (D. Md. 2003); *cf. Dillon v. The Great Atlantic & Pacific Tea Co.*, Inc., 403 A.2d 406 (Md. Ct. Spec. App. 1979) (holding that under predecessor statutes, "the sole means of redress" available to a plaintiff alleging disability discrimination in employment "was to complain to the Human Rights Commission," the responsible agency under the then-operative statute).

Plaintiffs' citation to Section 20–402 does not change this analysis. That provision prohibits persons licensed or regulated by the Maryland Department of Labor, Licensing, and Regulation from discriminating in the provision of public accommodations and services based on disability. Md. Code Ann., State Gov't § 20–402. Enforcement of this provision by a private party is also accomplished through the filing of a complaint with the Maryland Commission on Civil Rights. *See id.* § 20–1004 ("Any person claiming to be aggrieved by an alleged discriminatory act may file a complaint with the Commission."); *id.* § 20–101 (defining "discriminatory act" to include acts prohibited under § 20–402).

Because the Maryland anti-discrimination statutes do not provide a private right of action allowing individuals to file suit to allege disability discrimination in public accommodations, the Court will grant the Motion as to the Maryland statutory claims.

## IV. Negligence

In Count III, Plaintiffs allege that Tajdar is liable in negligence because she breached her duty of care to Plaintiffs, resulting in physical injury to A.R. and emotional distress to all three Plaintiffs. In the Motion, Tajdar argues that Count III fails to state a plausible claim for relief because the anti-discrimination provisions of the ADA do not create a tort duty in negligence.

Under Maryland law, to state a claim for negligence, the plaintiff must establish that (1) the defendant had a duty to "conform to a certain standard of conduct" to protect others "against unreasonable risks," (2) the defendant breached that duty, (3) there was a "reasonably close causal connection" between the defendant's breach and the plaintiff's injury, and (4) there was actual loss or damage to the plaintiff. *B.N. v. K.K.*, 538 A.2d 1175, 1178 (Md. 1988). Plaintiffs have not identified any common law duty to provide reasonable accommodations to an individual with a disability. In certain states, the violation of a statute alone can provide the basis for a breach of a defendant's duty under the doctrine of negligence *per se*. *See Rivers v. Hagner Mgmt. Corp.*, 959 A.2d 110, 123 (Md. Ct. Spec. App. 2008). Although Maryland does not follow that doctrine, the violation of a statute can be "evidence of negligence" under Maryland law. *Absolon v. Dollahite*, 831 A.2d 6, 9, 11 (Md. 2003); *see also Brooks v. Lewin Realty III, Inc.*, 835 A.2d 616, 620-21 (Md. 2003), *abrogated on other grounds by Ruffin Hotel Corp. of Md., Inc. v. Gasper*, 17 A.3d 676 (Md. 2011). To establish a *prima facie* case of negligence based on a statutory violation, the plaintiff must show that (1) the statute or ordinance is designed to protect a specific class of persons which includes the plaintiff; (2) the violation of the statute proximately caused the injury to the

plaintiff; and (3) the harm suffered is of the kind that the statute was intended to prevent. *Brooks*, 835 A.2d at 621; *see also Estate of Saylor v. Regal Cinemas, Inc.*, 54 F. Supp. 3d 409, 430 (D. Md. 2014). The first requirement "has generally limited application of this principle to the violation of statutes related to public safety or health related issues." *Estate of Saylor*, 54 F. Supp. 3d at 430 (collecting cases).

Many courts have found that "the ADA is not a public safety statute for purposes of the negligence per se doctrine," because the ADA is designed to prevent discrimination against individuals with disabilities, rather than to protect them from physical harm. *Hunter on behalf of A.H. v. District of Columbia*, 64 F. Supp. 3d 158, 189 (D.D.C. 2014) (collecting cases). *But see Hurley v. Loma Linda University Medical Center*, No. 12–5688, 2014 WL 580202, at *12 (C.D. Cal. Feb. 12, 2014). In contrast, the regulations contained in the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"), 28 C.F.R. pt. 36 (2018), which provide standards for the placement of handrails and other architectural features designed to assist persons with disabilities, relate to public safety and thus may be the basis of the standard of care in a negligence action. *Smith v. Wal–Mart Stores, Inc.*, 167 F.3d 286, 292–93, 295 (6th Cir. 1999); *Bray v. Marriott Int'l*, 158 F. Supp. 3d 441, 449 (D. Md. 2016). Relying on this reasoning, two judges in this District have held, under Maryland law, that a violation of the ADAAG can support a claim of negligence, while a violation of the ADA anti-discrimination provisions cannot. *Bray*, 158 F. Supp. 3d at 449 (holding that a hotel's failure to comply with ADAAG standards for roll-in shower seats could support a negligence claim arising when the plaintiff was injured while trying to move from her wheelchair to a shower seat); *Estate of Saylor*, 54 F. Supp. 3d at 429, 431 (holding that a movie theater's alleged ADA violation for failing to accommodate an individual with Down's syndrome

by allowing him to remain in his seat for a second showing did not support a negligence claim when security personnel caused a fatal injury to the individual when trying to remove him).

The Court agrees with this distinction. A claim based on a violation of a statute or regulation designed to protect an individual from physical harm falls squarely within the range of negligence claims. *See, e.g., Brooks*, 835 A.2d at 620 (allowing a negligence claim on behalf of a child with lead paint poisoning based on an alleged violation of Baltimore City Housing Code provisions requiring removal of lead paint). A negligence claim based on a violation of an anti-discrimination statute does not. *See, e.g., Estate of Saylor*, 54 F. Supp. 3d at 431. Notably, to allow a claim of negligence to proceed based on a violation of Title III of the ADA would effectively create a damages remedy for disability discrimination in public accommodations, even though Title III itself does not allow for monetary damages. *See Smith*, 167 F.3d at 293 (noting the district court's reasoning); *Christian v. United States*, No. 3:12-cv-72, 2013 WL 5913845, at *4 (N.D.W.V. Nov. 4, 2013). The Court therefore concludes that a violation of the provisions of the ADA barring discrimination in public accommodations does not create a duty of care that could support a negligence claim under Maryland law. *See Hunter*, 64 F. Supp. 3d at 189. The Motion will therefore be granted as to Count III.

## CONCLUSION

For the foregoing reasons, Tajdar's Motion to Dismiss, ECF No. 16, is GRANTED IN PART and DENIED IN PART. The Motion is granted as to any damages claim under the ADA, the Maryland statutory claims, and the negligence claim, which are dismissed with prejudice. The Motion is denied as to the ADA claims for injunctive and declaratory relief. A separate Order shall issue.

Date: November 19, 2018

THEODORE D. CHUANG
United States District Judge