UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

M.R., *by and through her parents, N.R. and A.R.*,
N.R. and
A.R.,

    Plaintiffs,

    v.

AZIN TAJDAR,

    Defendant.

Civil Action No. TDC-17-3836

**MEMORANDUM OPINION**

Plaintiffs M.R, a minor child, and her parents, A.R. and N.R., have filed a civil action against Defendant Azin Tajdar alleging that Tajdar discriminated against M.R. on the basis of disability by failing to make a reasonable accommodation at Tajdar's home day care center to allow M.R. to receive one-on-one services relating to her autism. Plaintiffs assert a claim under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189 (2018). Pending before the Court are Cross Motions for Summary Judgment, ECF Nos. 54 & 55, on which the Court held a hearing on May 28, 2020. During the hearing, the Court invited the parties to brief whether, based on the present record, the case is now moot. Tajdar responded by filing a separate Motion to Dismiss Amended Complaint as Moot, ECF No. 65. All three Motions are fully briefed. For the reasons set forth below, Tajdar's Motion to Dismiss will be GRANTED, and the Cross Motions for Summary Judgment will be DENIED AS MOOT.

**BACKGROUND**

Relevant background is set forth in this Court's memorandum opinion on Tajdar's first Motion to Dismiss, in which the Court dismissed Plaintiffs' claims for damages under the ADA and their Maryland statutory and common law claims. *M.R. ex rel. N.R. v. Tajdar*, No. TDC-17-3836, 2018 WL 6050888, at *1-2, *7 (D. Md. Nov. 19, 2018). The Court sets forth below the facts relevant to the resolution of the pending Motions.

**I.  Factual Background**

On January 5, 2015, when M.R. was nearly four months old, she began attending Kids and Tots, a home day care center that Tajdar operates out of her residence in Potomac, Maryland. Kids and Tots is licensed to accept a maximum of eight children at a time. Beginning in the summer of 2016, Tajdar began to notice certain developmental delays in M.R. and relayed her concerns to M.R.'s parents. Among other behaviors, Tajdar discussed M.R.'s tendency to isolate herself rather than play with the other children at the day care and raised the idea that M.R. might have autism. At Tajdar's suggestion, M.R.'s mother, A.R., contacted the Montgomery County Public Schools ("MCPS") Infants & Toddlers Program, which agreed to provide services to M.R. at the day care twice a month, beginning in December 2016. In February 2017, M.R. was formally diagnosed with autism by a doctor at the Kennedy Krieger Institute. In the same time frame, MCPS approved M.R. for Applied Behavioral Analysis ("ABA") therapy.

The MCPS services required private space in the day care center. Kids and Tots, which operates out of Tajdar's basement, consists of a large central area, a smaller activity room sometimes used for arts and crafts, and a nap room for infants. Tajdar initially offered the use of the activity room for these sessions. During an initial ABA session for M.R. in the activity room for which the MCPS personnel had brought toys, the other children watched through the room's

French doors and tried to get in to play with the new toys. Nevertheless, Tajdar told A.R. that the session had gone "fine." Joint Record ("J.R.") 23, ECF No. 58-1. Around March 17, 2017, Tajdar told A.R. that M.R. would not be able to use the activity room for her ABA sessions, as the classroom would be in use by the day care's other children, but she offered the use of the nap room, and M.R. had at least one session there.

Soon after March 23, 2017, Tajdar learned that the frequency of MCPS sessions was going to increase from twice a month to every day. Tajdar states that A.R. told her that MCPS planned to provide ABA services to M.R. in the day care for two to three hours a day, five days a week. According to A.R., the required time was two hours per day, for a total of 10 hours per week.

According to A.R., on March 27, 2017, Tajdar told her that M.R. would not be able to use either the activity room or the nap room for her ABA sessions. Tajdar, however, asserts that she started the discussion by asking A.R. if, instead of having ABA services at Kids and Tots five days a week, M.R. could have the private sessions at the day care three days a week and at her home the other two days so as not to prevent the other children from using all of the facilities. A.R. disagreed, and an argument ensued. According to Tajdar, she also suggested that the additional two sessions could occur in an upstairs room at her house. After that meeting, Tajdar called the state official responsible for licensing Kids and Tots to explore this option, but she was told that ABA services could occur only in one of the rooms in the basement day care center.

On March 30, 2017, Tajdar met with A.R. and M.R.'s father, N.R., and told them that she could not provide either private room for the ABA sessions because it would not be fair to the other children. The same day, at N.R.'s request, Tajdar sent them an email confirming her position, which stated:

> Unfortunately as of April 17 I will not have a private room available for [M.R.'s] ABA. I will have a new infant coming to my day care starting April 17 and as you

3

> know the private room used at present for her private session is our nap room for infants and younger kids. I am so sorry I will not be able to meet [M.R.'s] needs due to limited space and resources. Hope you will find a suitable child care for [M.R.] that could meet her needs.

J.R. 165. Prior to March 27, 2017, Tajdar had committed to accepting the infant, who was the sister of a child already enrolled at Kids and Tots.

At that point, even though Tajdar was willing to provide a private room for the ABA services until April 17, A.R. and N.R. immediately stopped bringing M.R. to Kids and Tots. In her deposition, A.R. explained this decision by stating that they considered M.R. to have been "kicked . . . out," that going forward "it was an unsafe space for [M.R.]," and that "[w]e didn't feel comfortable putting [M.R.] into a space where she was being discriminated against." J.R. 75. On April 17, 2017, M.R. began attending day care at Potomac Valley Academy ("PVA"). From that point until her birthday in August 2017, she received ABA services for ten hours per week at PVA. After her birthday, however, M.R. aged out of the ten-hour-a-week ABA services provided by MCPS. M.R. then began a full-day autism program referred to as Comprehensive Autism Preschool Program ("CAPP") at an MCPS building and received ABA services through that program, but continued to have before- and after-care at PVA. As of A.R.'s deposition on July 9, 2019, M.R.'s parents planned to continue with CAPP for another year and have M.R. begin kindergarten in Fall 2020. During the May 28, 2020 hearing on the Motions, counsel for Plaintiffs represented that although M.R. will begin kindergarten this fall, her parents still wish to reenroll M.R. at Kids and Tots for child care in the mornings before school begins and in the afternoons after school ends. Counsel acknowledged, however, during the hearing and in Plaintiffs' memorandum in opposition to Tajdar's Motion to Dismiss, that "M.R. no longer requires ABA services." Opp'n Mot. Dismiss at 5, ECF No. 66.

4

On March 13, 2020, Tajdar closed Kids and Tots in response to the ongoing COVID-19 pandemic. She has notified the parents of the children attending her day care of this closure and asked them to arrange to retrieve their belongings from her home. She has not, however, represented that she will not reopen her day care once the pandemic subsides, and Plaintiffs have submitted a June 12, 2020 screenshot of the website of the Maryland Department of Education, Division of Early Childhood, that lists Tajdar's day care as open.

## II.   Procedural History

On December 29, 2017, Plaintiffs filed suit against Tajdar in this Court. Their Amended Complaint, filed on March 26, 2018, alleged that Tajdar's refusal to make a private room at Kids and Tots available for M.R.'s daily ABA sessions constituted a refusal to provide M.R. a reasonable accommodation for her disability and intentional discrimination on the basis of disability, in violation of both the ADA and Maryland state law. They also asserted a separate claim of negligence. As relief, Plaintiffs sought (1) a declaratory judgment that Tajdar had discriminated against M.R. on the basis of her disability in violation of the ADA and Maryland state law; (2) compensatory and punitive damages; and (3) an injunction requiring Tajdar "to make reasonable accommodations to ensure M.R.'s return to the home-based day care." Am. Compl. at 13, ECF No. 13. Tajdar filed a Motion to Dismiss, which the Court granted in part and denied in part on November 19, 2019. *M.R. ex rel. N.R.*, 2018 WL 6050888, at *7. The Court dismissed Plaintiffs' claims under Maryland's anti-discrimination laws because those laws do not provide a private right of action, *id.* at *5-6, and Plaintiffs' negligence claim because the ADA's provisions do not create a duty of care the violation of which would create tort liability, *id.* at *6-7. Although the Court dismissed the ADA claim for damages and concluded that the only remedy available under the relevant provision of the ADA is injunctive relief, the Court rejected Tajdar's argument

that Plaintiffs lacked standing because they had alleged that they still wanted to return M.R. to Tajdar's day care and thus had plausibly alleged a real threat of future injury. *Id.* at *3-4. For the same reasons, the Court declined to dismiss Plaintiffs' claim for declaratory relief. *Id.* at *4.

After discovery, the parties filed the pending Cross Motions for Summary Judgment. Based on its review of the record, the Court asked the parties to address at the hearing whether the case is now moot. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter . . . ."); *United States v. Springer*, 715 F.3d 535, 540 (4th Cir. 2013) ("Mootness is a jurisdictional question and thus may be raised *sua sponte* by a federal court at any stage of proceedings."). Following the hearing, with leave of the Court, Tajdar filed the pending second Motion to Dismiss the Amended Complaint as Moot.

## DISCUSSION

In the Cross Motions for Summary Judgment, the parties separately argue that the evidence in the record establishes that they are entitled to judgment as a matter of law on Plaintiffs' ADA claim. In the Motion to Dismiss, Tajdar argues that the case is now moot because (1) Tajdar has closed Kids and Tots; and (2) the applicable relief, a requirement that M.R. receive ABA services in a private room at Kids and Tots, is no longer needed or appropriate for M.R.

**I.      Legal Standard**

Article III of the United States Constitution limits the judicial power of the federal courts to actual "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "When a case or controversy ceases to exist, the litigation is moot, and the court's subject matter jurisdiction ceases to exist also." *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015). Accordingly, the Motion to Dismiss is a motion under Federal Rule of Civil Procedure

12(b)(1).  In assessing such a motion, when a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  The court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

## II.    Mootness

Tajdar advances two arguments for dismissing this case as moot.  First, she argues that M.R.'s progression out of ABA sessions, entry into CAPP, and impending enrollment in kindergarten demonstrates that she no longer needs the reasonable accommodation the denial of which forms the basis of her claim.  In response, Plaintiffs argue that even though M.R. no longer requires private ABA sessions, her parents still wish to reenroll her at Kids and Tots for childcare before and after the full-day CAPP program or kindergarten, and that she may require some different accommodations there.  Second, Tajdar argues that the closure of her home day care center establishes that there is no longer any potential for future injury to M.R.  Plaintiffs, however, argue that the temporary closure of Kids and Tots during a pandemic, without evidence that the day care will not reopen, does not moot their case.  Because the Court accepts the first argument, it need not address the second.

"[A] case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'"  *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v.*

*Serv. Emps.*, 567 U.S. 298, 307 (2012)).  Voluntary cessation of a challenged practice does not necessarily render a case moot.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.*, 528 U.S. 167, 189 (2000).  "In seeking to have a case dismissed as moot . . . the defendant's burden 'is a heavy one.'"  *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953)).  "The defendant must demonstrate that it is '*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Id.* (quoting *United States v. Phosphate Export Assn., Inc.*, 393 U.S. 199, 203 (1968)).

A change in circumstances that prevents plaintiffs from benefiting from injunctive relief can render an ADA claim moot.  *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862, 864-65 (9th Cir. 2017) ("Because Bayer has neither shown that he is reasonably likely to be subjected once again to the conduct alleged as the basis for his claim nor shown that he can reasonably be expected to benefit from the injunctive relief he seeks, we conclude his claim for injunctive relief is moot."); *see also Johnson v. Cala Stevens Creek/Monroe, LLC*, 401 F. Supp. 3d 904, 909-10 (N.D. Cal. 2019) (finding an ADA claim that facilities at a spa were not ADA-compliant to be moot after the permanent closure of the spa).  In analogous contexts, courts have found claims for injunctive relief by individuals with disabilities to be moot when the need for disability-related services changed to the point that the originally requested relief was no longer needed.

For example, in *Malkentzos v. DeBuono*, 102 F.3d 50 (2d Cir. 1996), the plaintiff filed suit under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1482 (2018), seeking, among other relief, an order that the state provide to his autistic two-year-old son 40 hours per week of ABA services.  *Id.* at 53-54.  Although the district court granted a preliminary injunction requiring that the state provide or pay for the 40 hours of ABA services going forward,

the appeals court vacated that part of the order as moot because by that time, it was undisputed that the child had "'aged out' of his eligibility to receive early intervention services" from the New York State Department of Health, which provided such services only to children under three years old. *Id.* at 55.

In *Brown v. Bartholomew Consolidated School Corp.*, 442 F.3d 588 (7th Cir. 2006), an autistic child's parents filed an IDEA challenge to the individualized educational program ("IEP") proposed for the child's kindergarten school year, which consisted of a full-day placement in mainstream kindergarten with specialized assistance, instruction, and therapy, as opposed to the parents' proposal of at-home, one-on-one instruction. *Id.* at 593-94. The court held that the IDEA challenge was moot where the child was presently in third grade, had moved to a different but affiliated school district, and no longer had the same educational needs. *Id.* at 599. Noting that "[n]ow, as a nine-year old, [the child's] readiness for mainstream education presents a different question calling for reassessment of his educational development," the court explained that because "what was right for [the child] in kindergarten may not be the proper education program when he enters the third grade," a determination whether it was legally permissible to have placed the child in a mainstream class in kindergarten "would be issuing, in effect, an advisory opinion" on the correctness of an "outdated IEP." *Id.*

Likewise, in *Ostby v. Manhattan School District No. 114*, 851 F.3d 677 (7th Cir. 2017), the court held that an IDEA challenge to a school district's decision to place a first grade student with various disabilities into a non-mainstream class known as the SELF program over his parents' objections was moot where the child had progressed to third grade at a different school in the same school district, and it was undisputed that there was no further need for the child to be sent to the SELF program. *Id.* at 680-82. The court held that "there is no longer an injury that can be

9

redressed by a favorable decision" because the child "is no longer in first grade and is no longer subject to the challenged IEP." *Id.* at 682.  The court further rejected the argument that a ruling that the SELF program placement was unlawful could prevent further injury from later decisions by the school district because where the parties agreed that there was no further need for the SELF program, a future violation was "not reasonably likely to occur." *Id.* at 684.

As these decisions illustrate, M.R.'s case is moot because "it is impossible for a court to grant [her] any effectual relief whatever.'" *Chafin*, 568 U.S. at 172 (quoting *Knox*, 567 U.S. at 307).  In the Amended Complaint, M.R. asked this Court to "[r]equire [Tajdar] to make reasonable accommodations to ensure M.R.'s return to the home-based day care."  Am. Compl. at 13.  The reasonable accommodation that M.R. has sought throughout this litigation is the provision of a private room for M.R.'s daily, two-hour-long ABA sessions in a day care setting.  *See id.* ¶ 52 ("The requested reasonable accommodation by the Rs for M.R. was the use of the classroom or nap room for use for ABA therapy.").  As in *Malkentzos*, however, M.R. "aged out" of the ABA program.  *Malkentzos*, 102 F.3d at 55.  Since August 2017, M.R. has neither needed nor received daily ABA sessions in a day care center.  As A.R. stated in her deposition, A.R. and N.R. "knew that [ABA treatment] would only be from April [2017] through August [2017] because county services was going to end on [M.R.'s] birthday."  J.R. 76.  A.R. testified that M.R. "received ten hours of ABA services [per week] at [PVA] up until her birthday of 2017, and then she moved to the CAPP autism program, which was a full-day autism program through the county."  J.R. 78.

It is therefore undisputed that as of August 2017, M.R. was no longer eligible for, or needed, the private, two-hour ABA sessions within a day care facility, and that from that point forward, she has instead needed the full-day autism program that takes place at a local public school building.  At this point, where M.R. no longer needs the accommodation sought when she

was two years old because the ABA services are no longer "the proper education program" for M.R., a ruling on whether Tajdar's failure to accommodate the ABA services would be, "in effect, an advisory opinion" on an "outdated" request for a reasonable accommodation. *Brown*, 442 F.3d at 599. Even if M.R. were to reenroll in Tajdar's day care now for the limited hours of before- and after-school care, where it is undisputed that M.R. no longer needs the particular services that warranted the requested accommodation of a private room for autism therapy, and at the hearing plaintiff's counsel acknowledged that M.R. would not need a specialist during before- or after-school care, there is no basis to issue such an opinion. *See Ostby*, 851 F.3d at 684 (finding that a future violation was "not reasonably likely to occur" where the parties agreed there was no further need for the educational program at issue). Thus, as of August 2017, this case was moot.

The Court's prior determination in denying the first Motion to Dismiss that Plaintiffs had "alleged sufficient facts to establish standing to seek injunctive relief," *M.R. ex rel. N.R.*, 2018 WL 6050888, at *4, does not preclude this ruling even though mootness and standing are closely related. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980))). Here, at the pleading stage, Plaintiffs alleged that they wanted to reenroll M.R. at Kids and Tots, as it was more affordable and conveniently located than PVA. Where nothing in the Amended Complaint suggested that M.R.'s ABA therapy had ended, the Court properly construed Plaintiffs' allegations as stating that M.R.'s need for daily ABA services—and the concomitant reasonable accommodation—persisted. *M.R. ex rel. N.R.*, 2018 WL 6050888, at *4; *see also Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013) (stating that a court considering a motion to dismiss

11

must "draw all reasonable inferences in favor of the plaintiff"). The Court therefore found that Plaintiffs had plausibly alleged that without an injunction they would suffer a future injury. *M.R. ex rel. N.R.*, 2018 WL 6050888, at *3-4.

Now that this case has proceeded through discovery and to the motion for summary judgment stage, the Court has the benefit, and indeed the duty, of considering the specific factual record. *See Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). That evidence includes A.R.'s deposition, conducted on July 9, 2019, several months after the Court issued its memorandum opinion on the first Motion to Dismiss. In her deposition, A.R. contradicted the prior claim that Plaintiffs wanted to return M.R. to Kids and Tots by testifying that as of April 2017, Plaintiffs no longer had an interest in having M.R. return because they considered it "an unsafe space" at that point. J.R. 75. Most significantly, she also testified that M.R. stopped receiving ABA services at a day care center when she turned three years old in August 2017 and from that point forward was enrolled in the full-day autism CAPP program at an MCPS building. J.R. 77-78. Based on these specific facts not previously available to the Court, the Court must conclude that this case is now moot.

Finally, although Plaintiffs seek not only injunctive relief, but also a declaratory judgment that Tajdar discriminated against M.R., the latter request does not provide a basis to maintain the case, because the test for whether Article III's requirement of a case or controversy has been satisfied is the same for both claims. *See Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991) (assessing Article III standing challenges to claims for injunctive and declaratory relief under the same standard). Where a plaintiff is seeking "prospective declaratory and injunctive relief rather than damages," allegations of past injuries do not "show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *Nanni v. Aberdeen Marketplace, Inc.*,

878 F.3d 447, 454 (4th Cir. 2017) (while addressing standing, noting that "standing, mootness, and ripeness are simply subsets of [the Constitution's] command that the courts resolve disputes, rather than emit random advice"); *Bryant*, 924 F.2d at 529.  Accordingly, the Court must find that this case is moot.  Where the case must dismissed on that basis, the Cross Motions for Summary Judgment must be denied as moot.

## CONCLUSION

For the foregoing reasons, Tajdar's Motion to Dismiss Amended Complaint as Moot will be GRANTED, and the Cross Motions for Summary Judgment will be DENIED AS MOOT.  A separate Order shall issue.


Date:  July 2, 2020                                 /s/ *Theodore D. Chuang*
                                                    THEODORE D. CHUANG
                                                    United States District Judge